The hill charges- that tlie complainant was a widow, possessed of a considerable real and personal-estate, and March, 1788, intermarried with Cornelius Brown, an Englishman who had recently settled in the country— And he, by virtue of the marital rights, took possession 0f the estate, and appropriated part of the profits to the purchase oí* a plantation called Battersea: That it lias }jec}1 recently reported, that the said C. Brown was a married man, at the time of addressing and marrying the complainant: And that his view in marrying her, was to get possession of her property, to dispose of the same, and *•<> convoy the proceeds to his wife in England: That the «aid C. Brown wrote several letters to his friends in Eng-laud, wh\h disclose his situation and his views — copies are fi]et} with the bill. In one of them, written to his , . , _ , , ,. , . .,. . brother in law Mr. Bunn, he speaks of las wue, m Eng *197 land, and desires him to bless her ee for her unfortunate husband.” And in another letter to his Sister Mrs. Dunn, he speaks of his wife, in England; and hopes they will meet ere long never to part again — In both letters he desires his situation in America to bo concealed, and that he should be represented as at Madras. He assures his sister, that he willic try his utmost to realize all that he «■.an, to make the object of his soul more happy than she had been,” and requests his sister to keep her in good spirits. In a postscript he states, that since some intimation of his situation had been given, about a wife in England, “ the old woman has taken a different bed,” which does not disturb him: That she being now convinced he did not marry her for love, would be glad to find the report true, in order to save her property — but “ hopes she will be disappointed.”
The complainant states, that she has the strongest reason to believe that the said Cornelius Brown is about to dispose of her property, and remit the amount to England, and leave her in penury and want.
The bill prays that the said C. Brown may be ordered to deliver up the property he got by complainant, and to account for the profits, and prevented from wasting the game: and that the same may be impounded in this court till the final decree; and that the property may he restored to complainant, and she relieved in the premises.
The defendant in his answer admitted that he married the complainant in 1787: That she was possessed of two tracts of land, thirty six negro slaves, and some stock, of which he took possession: He denies that he was married before he married the complainant, but confesses that fot some years before he left England, ho cohabited witli a woman, who was commonly reputed to be his Wife: That he did not make known his real situation, because he had promised that woman not to marry whilst she lived; which promise lie would have kept, but for a false report of her death: That he endeavoured to make complainant happy, and she behaved well for some time, blit afterwards drank to excess, and -was frequently intoxicated; and behaved otherwise improperly, assuming the sole management of *198 the property, and ordering the overseer not to obey him, but to abuse him: -That despairing of reclaiming her, and of any domestic happiness, he wrote the letters set forth by complainant, lioping they would induce the complaiii-ant to come to a separation: That they were written for that purpose alone, and never intended to be sent to Eng - land; but were placed in a drawer to which his wife had access, that they might fall into her hands. Ho admits that he took possession of the property: That the crop of 1787 was not sufficient to feed the negroes; which obliged him to purchase corn for their use with his own money: He says, that since this suit has been brought, he has been driven off the plantation by the overseer, with a rifle, acting under the orders of his wife: That he never disposed of any of the negroes hut one; and that with consent of his wife, who has the value of him: That he purchased the plantation called Battersea for five hundred guineas, part of which he paid out of his own pocket, and gave his bonds for the balance: That all the money he received from the estate, together with an additional sum of thirty-seven pounds, he applied to its uses; and he advanced forty, pounds to complainant before marriage; and for his wife and sister after marriage about ninety pounds: Denies, notwithstanding what is said in the letters, that he liad any intention to remove from this country, or of remitting money to England; though he admits he offered á large premium lor hills of exchange, but it was to effect a payment on the purchase of Battersea, the bonds being offered low for cash.
7> jj p 214,
JUNE. 1790.
„ It< 21. p.
Upon reading the bill of complaint, verified upon oath, together with the affidavit of .Tames Lawrence, iun. it was ^ * ordered, that a writ of injunction do issue against the defendant, and that he bo held to bail thereon, in the sum of 5000L; and also that a writ of ne exeat do issue, in the sum of 10001. — the sureties to be approv'd by the master of this Court.
On further argument of this case, it was ordered, that the defendant Cornelius Brown do convey to —--- as trustees, all the property which he claims by virtue of A A * his marriage with the complainant, to be Subject to the *199 future order of the court: And that Battersea plantation, which he purchased subsequent to said marriage, continue to he impounded until the further order of the court: And that the defendant be bound in the sum of 100Í. with two sureties in 501. each, not to molest either the person or the property of said complainant.
it. b. p. 246
Afterwards it was further ordered, that the complainant and her agents be restrained from committing waste on the Battersea plantation, or the stock: That the defendant and complainant shall each be entitled to re ceive one half of the money arising from the sale of the wood, in the hands of the factor: And that on the defendant giving the security and executing the conveyances heretofore ordered, the writ of no exeat be discharged, and the defendant set at liberty.
This cause came to a hearing on the 24th Septan* her, 1791. — It was fully argued by general Pinckney and Mr. E. Rutledge for complainant, and by Mr. Read for defendant.
For complainant it was insisted, that the letters were •Conclusive evidence of the fact, that C. Brown the defendant was a married man when he married the complainant: That Harris’s evidence is express that defendant-told him in 1785 that he had a wife living in London: That if a man lives with a woman, and acknowledges her as his wife, he shall not he admitted to say that he is not married, but shall he liable for her debts. See Burr. 2177. See Espinasse 207, — Man made liable for the debts of a woman with whom lie cohabited, though he afterwards swore he was not married. Marriage by reputation is admitted to be made out in all cases but two, viz. bigamy and crim. con. See Bullen 27. 4 Burr. 2057. Marriage by reputation is sufficient to support a claim of inheritance. Bla. Rep. 632., This courtis bound to give relief, on the ground of fraud,- so that no ecclesiastical jurisdiction need be exercised li,ere. If Ills marriage is not nullified upon the evidence, and lie keeps the property, may he not be subjected to the debts of the'first wife?
For defendant it was insisted, that the proofs of the first marriage were not conclusive, nor sufficient to esta *200 blish it, so as to authorize this court to act. Defendant SWcars he was not married in England. If a decree was given against defendant on this evidence, he might be prosecuted for bigamy. It Would bo dangerous to sot up marriage on such evidence.
DECREE BOOK. p. 33.
Chancellor Mathews, in his notes, remarks that “ the evidence was too slight and superficial to prove the fact of the marriage of defendant with the woman in England, alleged to be his wife: More especially as he denies in his answer that he was married; which not having been contradicted by any evidence of equal validity, bis answer must be taken for true. However, as his own letters shew a dishonest intention to make a new property of his wife, by selling what he got by her, and abandoning her, the court will so far interpose as to prevent this exercise of his powers over the estate, — The following is extracted from the decree book.
“ The bill stated that the defendant had courted and married complainant, although he was then a married . . .. , . ,. man, as has since appeared: And that he was making away with the complainant’s property, and was going off with the proceeds. The Court did not consider the testimony (consisting of defendant’s verbal declarations, and dome letters) sufficient to establish the first marriage. The cases do not go so far; they only allow a man to be made liable for debts contracted by a woman whom he permits to pass as his wife: but such evidence would not be sufficient to convict in a criminal prosecution, or to impeach a real second marriage. But as the defendant has behaved very ill to this lady, the court, to prevent his making a new property of the unfortunate lady, decreed, upon the authority of Gardiner vs. Walker, Stra. 504, and of a case decided in this court, that the husband shall execute deeds of settlement, to bo prepared by the master, of the whole real and personal property of which comlainant ivas possessed at the time of the marriage, to the use of complainant and defendant during their joint lives, and to their issue after their deaths. If no issue, and he survives, the personal estate to go to him, and the real estate tp her devisee: but if she survives him, the whole *201 estate to go to lier. The injunction heretofore granted, to be retained till the execution of the deeds — then dissolved.
E. Rutledge and general Pinckney for complainant. Read for defendant.